# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| NITROCRETE, LLC | ) | Case No. 21-15739-KHT |
| EIN: 84-4321060 | ) | |
| | ) | Chapter 11 |
|         Debtor-in-Possession. | ) | |
| | ) | |
| In re | ) | |
| | ) | |
| NITRO HOLDINGS, LLC | ) | Case No. 21-15740 |
| EIN: 84-4342645 | ) | |
| | ) | Chapter 11 |
|         Debtor-in-Possession. | ) | |
| | ) | |
| In re | ) | |
| | ) | |
| NITROCRETE IP, LLC | ) | Case No. 21-15741 |
| EIN: 84-4364002 | ) | |
| | ) | Chapter 11 |
|         Debtor-in-Possession. | ) | |
| | ) | |
| In re | ) | |
| | ) | |
| NITROCRETE EQUIPMENT, LLC | ) | Case No. 21-15742 |
| EIN: 84-4360818 | ) | |
| | ) | Chapter 11 |
|         Debtor-in-Possession. | ) | |
| | ) | |
| In re | ) | |
| | ) | |
| NITROCRETE HOLDINGS, LLC | ) | Case No. 21-15743 |
| EIN: 85-3946334 | ) | |
| | ) | Chapter 11 |
|         Debtor-in-Possession | ) | |
| | ) | |

**MOTION FOR ENTRY FOR ENTRY OF: (I) AGREED ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL; (II) FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION TO VECTRA BANK; (IV) SETTING A FINAL HEARING ON USE OF CASH COLLATERAL; AND (V) GRANTING RELATED RELIEF**

NITROcrete, LLC, Nitro Holdings, LLC, NITROcrete IP, LLC, NITROcrete Equipment, LLC, and NITROcrete Holdings, LLC, the debtors and debtors-in-possession in the above-captioned chapter 11 cases (each a "**Debtor**," and collectively, the "**Nitro Debtors**"), by and through their undersigned proposed counsel, hereby request, pursuant to 11 U.S.C. § 362(c)(2)(A), Fed. R. Bankr. P. 4001(b) and 9014, and L.B.R. 4001-2, 2081-1 and 9013-1, entry of an interim order, substantially in the form of agreed order attached hereto, authorizing use of cash collateral on an interim basis, granting adequate protection in connection therewith, entry of a final order authorizing use of cash collateral, setting a final hearing on use of cash collateral, and granting related relief. In support of this motion, the Nitro Debtors state as follows:[1]

## SUMMARY OF MATERIAL TERMS

1. Pursuant to Fed. R. Bankr. P. 4001(b)(1)(B)(i), Zions Bancorporation, N.A. d/b/a Vectra Bank Colorado ("**Vectra**") has an interest in the Cash Collateral (as defined below).

2. Pursuant to Fed. R. Bankr. P. 4001(b)(2)(B)(ii), the purposes for the use of Cash Collateral is to permit, among other things, the orderly continuation of the operation of the Nitro Debtors' businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll and to satisfy other working capital needs and other costs associated with Nitro Debtors' business operations during the chapter 11 cases.

3. Pursuant to Fed. R. Bankr. P. 4001(b)(1)(B)(iii) and Local Bankruptcy Rule 4001-2(a)(1), the essential terms of the Agreed Interim Cash Collateral Order are summarized as follows:[2]

| | |
|---|---|
| *Maximum loan amount:* | N/A |
| *Borrowing conditions:* | N/A |
| *Interest rate:* | N/A |
| *Fees, costs and charges payable by Debtors:* | N/A |
| *Maturity:* | N/A |
| *Events of default:* | The Debtors' right to use the Cash Collateral as herein authorized shall terminate on 5:00 p.m. (prevailing mountain time) on |

---

[1] Unless otherwise specified, all references herein to "Section," "§," "Bankruptcy Code" and "Code" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

[2] This summary of the Agreed Interim Cash Collateral Order provided herein is provided for the benefit of the Court and parties in interest. In the event of an inconsistency between the summary provided herein and the Agreed Interim Cash Collateral Order, the the Agreed Interim Cash Collateral Order shall control.

| | |
|---|---|
| | December 17, 2021 or as otherwise ordered by the Court. Any Termination shall not affect the validity, priority or enforceability of any and all rights, remedies, benefits and protections provided to Bank under this Interim Order as of the Termination Date, which rights, remedies, benefits and protections shall survive such Termination. *Agreed Interim Cash Collateral Order*, p. 11, ⁋ 7.<br><br>An "Event of Default" shall occur upon: (a) The failure by the Debtors to comply with any of the material terms or conditions of this Interim Order, including, without limitation, the failure by the Debtors to comply with the Approved Budget pursuant to the terms of Paragraph C; (b)Without the prior written consent of Bank, the appointment of a Chapter 11 trustee or examiner; (c)Without the prior written consent of Bank, the issuance to a taxing authority or the granting of a motion seeking to grant a third party a security interest or lien upon all or part of any property of the Debtors that has a priority which is senior to, or equal with, Bank's Prepetition Liens or the Adequate Protection Liens in all or any portion of such property; (d) Without the prior written consent of Bank, the granting by the Court of a motion for relief from the automatic stay in favor of any party, other than Bank, with respect to any material portion of the Prepetition Collateral or Postpetition Collateral (including, but not limited to, any Cash Collateral); or (e) The conversion of this case to a case under Chapter 7 of the Code; (f) Without the prior written consent of Bank, the granting of any motion to amend or modify the terms of the Agreed Interim Cash Collateral Order. *Agreed Interim Cash Collateral Order*, pp. 15-16, ⁋ 13. |
| *Remedies in the event of default:* | Debtors shall be prohibited from using the Cash Collateral, absent further order of this Court, upon Termination, including Termination effected through the service by Bank of written notice to the Debtors and its counsel, the Court, any Committee and its counsel (as and to the extent applicable) and the U.S. Trustee that an Event of Default has occurred and is continuing. *Agreed Interim Cash Collateral Order*, p. 15, ⁋ 13. |
| *Use of funds limitations:* | Cash Collateral shall be used by the Debtors in accordance with the Initial Approved Budget in substantially the same form as that which is attached as Exhibit A to the Agreed Interim Cash Collateral Order. *Agreed Interim Cash Collateral Order*, pp. 6-7, ⁋ C; pp. 10-11, ⁋ 6. |
| *Protections afforded* | The Adequate Protection Liens granted to Vectra shall not be subordinated or be made *pari passu* with any other lien under §§ |

| *under §§ 363 and 364:* | 363 and 364 of the Code or otherwise. *Agreed Interim Cash Collateral Order*, p. 13, ¶11(a). |
|---|---|
| *Line-item budget:* | *See Initial Approved Budget attached as <u>Exhibit A</u>.* |

4. The Agreed Interim Cash Collateral Order contains certain provisions identified in L.B.R. 4001-2(a)(2), including, but not limited to, provisions binding the Nitro Debtors' estates with respect to the validity, perfection, or amount of the Vectra's lien and provisions binding the Nitro Debtors' estates with respect to the relative priorities of Vectra's lien. *See Agreed Interim Cash Collateral Order*, pp. 3-6, 12-14. Such provisions are necessary for the Nitro Debtors to obtain Vectra's consent for use of the Cash Collateral, absent which Vectra may not have provided such consent. As more fully discussed below, the Nitro Debtors have a critical need for use of Cash Collateral to pay operating expenses associated with its business operations and use of the Cash Collateral is necessary to the Nitro Debtors' ability to preserve and maintain going-concern value of their businesses for the benefit of creditors and all parties in interest. The use of Cash Collateral is necessary to avoid immediate and irreparable harm to the Nitro Debtors' bankruptcy estates.

## JURISDICTION AND VENUE

5. The United States Bankruptcy Court for the District of Colorado (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory basis for the relief requested herein is § 362(c)(2)(A), Fed. R. Bankr. P. 4001(b) and 9014, and L.B.R. 4001-2, 2081-1 and 9013-1.

## BACKGROUND

7. On November 18, 2021 (the "**Petition Date**"), the Nitro Debtors separately filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court, commencing the above-captioned chapter 11 cases.[3]

8. Nitro Holdings, LLC is a holding company with four wholly owned subsidiaries, NITROcrete LLC, NITROcrete IP, LLC, NITROcrete Equipment, LLC, and NITROcrete Holdings, LLC. NITROcrete Holdings, LLC is a holding company with two non-debtor, wholly owned subsidiaries, NITROcrete Brazil and NITROcrete Mexico.

9. The Nitro Debtors continue to operate their businesses as debtors-in-possession

---

[3] Contemporaneously with the filing of this motion, NITROcrete, LLC filed a motion in its chapter 11 case, Case No. 21-15739, seeking entry of an order, pursuant to Fed. R. Bankr. P. 1015(b) and L.B.R. 1015-1 authorizing and directing the joint administration of the Nitro Debtors' related chapter 11 cases for procedural purposes only, and further requesting use of the combined caption contained in this motion.

pursuant to §§ 1107(a) and 1108. No creditors' committee has been appointed in this case by the Office of the United States Trustee, nor has any trustee or examiner been requested or appointed.

10. A description of the Nitro Debtors' business, the reasons for filing this chapter 11 case and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set more fully described in the Declaration of Kathleen M. Walton in Support of First Day Relief (the "**First Day Declaration**"), which the Nitro Debtors hereby adopt and incorporates as if fully set forth herein.

11. Vectra is the Nitro Debtors' senior lender. Prior to the Petition Date, the Nitro Debtors and Vectra entered into a Credit and Security Agreement, dated as of February 6, 2020, as amended by the First Amendment to Credit and Security Agreement, dated as of January 8, 2021, and as further amended by the Joinder and Second Amendment to Credit and Security Agreement, dated as of July 21, 2021 (collectively, as amended, restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**"). The Credit Agreement, amendments thereto, and all documents, instruments, and agreements executed in connection therewith or related thereto are hereinafter referred to as the "**Loan Documents**."

12. Pursuant to the Loan Documents, the Nitro Debtors incurred loan obligations (the "**Secured Obligations**") in favor of Vectra. Those Secured Obligations were in default as of the Petition Date. As of the Petition Date, the Secured Obligations owed to Vectra, without defense, counterclaim or offset of any kind, totaled no less than $7,214,270.86, plus accrued and unpaid interest with respect thereto and any additional fees, costs, expenses, and other obligations incurred in connection therewith due under the Loan Documents.

13. As set forth in the Loan Documents, as security for the Secured Obligations the Nitro Debtors granted to Vectra a first-priority valid, perfected and enforceable security interest (the "**Prepetition Liens**") against all collateral previously pledged by the Nitro Debtors and previously perfected by Vectra as of the Petition Date to secure repayment of the Secured Obligations under the Loan Documents (the "**Prepetition Collateral**").[4]

14. The Nitro Debtors acknowledge all of their cash, negotiable instruments, deposit accounts, or other cash equivalents in any form, including, without limitation, income, proceeds, products, revenues or profits of property or cash arising from the collection, sale, lease, disposition, use, or conversion to cash of any property, or fees, charges, accounts, or other payments, and such other forms of property as are contemplated under § 363, constitute cash collateral of Vectra governed by § 363, whether Vectra's liens or security interests (including, without limitation, any replacement liens or security interests) existed on the Petition Date or arise thereafter, and whether such property that has been converted to cash existed as of the Petition Date or arose or was generated thereafter (collectively, the "Cash Collateral"). Further, the Nitro Debtors acknowledge all of their cash and cash equivalents,

---

[4] The Prepetition Collateral does not include titled vehicles owned by Debtor NITROcrete Equipment, LLC (the "Titled Vehicles").

{Z0371522/2}                                5

including any cash in deposit accounts, wherever located, and all cash that constitutes proceeds of Prepetition Collateral (as defined in the Loan Documents) are part of the Prepetition Collateral and constitute Cash Collateral subject to the Prepetition Liens of Vectra.

15. The Nitro Debtors lack sufficient funds to support their continued operations during the chapter 11 cases unless they are authorized to use Cash Collateral. Prior to the Petition Date, the Nitro Debtors and Vectra engaged in good faith, arm's length negotiations for use of Cash Collateral on an interim basis under the terms and conditions contained in the attached proposed agreed interim order (the "**Agreed Interim Cash Collateral Order**").

## RELIEF REQUESTED

16. By this motion, the Nitro Debtors seek, pursuant to § 362(c)(2)(A), Fed. R. Bankr. P. 4001(b) and 9014, and L.B.R. 4001-2, 2081-1 and 9013-1, entry of an order on an expedited basis, substantially in the form of the Agreed Interim Cash Collateral Order, authorizing use of cash collateral on an interim basis, granting adequate protection to Vectra in connection therewith, entry of a final order authorizing use of cash collateral, setting a final hearing on use of cash collateral (the "**Final Hearing**"), and granting related relief.

## BASIS FOR RELIEF REQUESTED

17. The Nitro Debtors intend to continue business operations during the pendency of their chapter 11 cases while seeking a sale of their business operations as a going concern or proposing a chapter 11 plan to reorganize their business affairs. To continue the Nitro Debtors' business operations, maximize the value of the Nitro Debtors' businesses as going concerns, and ensure the fullest possible return to creditors, the Nitro Debtors must immediately use the Cash Collateral in which Vectra has an interest. Without the use of the Cash Collateral, the Nitro Debtors will have insufficient funding to permit, among other things, the orderly continuation of the operation of its businesses, maintain business relationships with vendors, suppliers and customers, make payroll, and satisfy other working capital needs and other costs associated with the Nitro Debtors' business operations.

18. The Nitro Debtors have a critical need for the use of Cash Collateral to pay operating expenses associated with business operations, all in accordance with the Budget (as defined below). The Nitro Debtors lack sufficient available sources of working capital and financing to operate, reorganize or effectuate an orderly wind-down of its remaining business. Indeed, absent the relief requested herein, the Nitro Debtors' operations will be brought to an immediate halt, with damaging consequences for the Nitro Debtors and their bankruptcy estates and creditors. Use of the Cash Collateral is necessary to the Nitro Debtors' ability to preserve and maintain going-concern value of their businesses for the benefit of creditors and all parties in interest. Failure to grant the relief requested herein on an interim basis would result in immediate and irreparable harm to the Nitro Debtors' bankruptcy estates. Accordingly, the use of Cash Collateral during the interim period is necessary to avoid immediate and irreparable harm to the Nitro Debtors' bankruptcy estates. Therefore, the Nitro Debtors, with the agreement and consent of Vectra, propose to use Cash Collateral on an interim basis until such time as the Court schedules a Final Hearing on the use of Cash Collateral. At the Final

Hearing, the Nitro Debtors will seek relief to use Cash Collateral on a final basis during the term of the chapter 11 cases.

19. A debtor's use of property of the estate, including cash collateral, is governed by § 363. Section 363(c)(2) provides:

> The trustee may not use, sell, or lease cash collateral under [§ 362(c)(1)] of this subsection unless –
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizing such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2). Additionally, § 363(e) provides that upon request of an entity that has an interest in property to be used by a debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. 11 U.S.C. § 363(e).

20. Generally, what constitutes adequate protection is decided on a case-by-case basis. *In re DB Capital Holdings, LLC*, 454 B.R. 804, 822 (Bankr. D. Colo. 2011) (*citing In re Becker Indus.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)) (the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process"); *see also In re Columbia Gas Sys., Inc.*, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996).

21. Here, in satisfaction of § 362(c)(2)(A), Vectra, which holds an interest in the Cash Collateral, consents to the Nitro Debtors' use of Cash Collateral on an interim basis under the terms and conditions contained in the attached proposed Agreed Interim Cash Collateral Order.

22. Under the terms of the Agreed Interim Cash Collateral Order, for the Nitro Debtors' use of Cash Collateral the Nitro Debtors propose adequate protection for Vectra's interest in the Cash Collateral. In particular, and as more fully set forth in the attached proposed Agreed Interim Cash Collateral Order, the Nitro Debtors agree to grant Vectra various forms of adequate protection, to the extent of the diminution in value of the Prepetition Liens in the Prepetition Collateral from and after the Petition Date, including, but not limited to, the following (collectively, the "**Adequate Protection Obligations**"):

> a. Valid, enforceable, unavoidable and fully and automatically perfected replacement liens and security interests (the "**Adequate Protection Liens**"), supplemental to and in addition to the Prepetition Liens and with the same priority as enjoyed by the Prepetition Liens immediately prior to the Petition Date, in all prepetition and postpetition assets and property (tangible, intangible, real, personal, and mixed) of the Nitro Debtors whether now existing or hereafter acquired or arising, and wherever located, including but not limited to all contracts, accounts, deposit accounts,

chattel paper, inventory, equipment, general intangibles, goods, real property, leases, cash and cash equivalents (including any funds released to the Debtors from escrow or other segregated accounts), claims, causes of action and proceeds thereof (the "**Postpetition Collateral**," and together with the Prepetition Collateral, the "**Collateral**"); provided, however, that Postpetition Collateral shall not include: (i) the claims and causes of action of the Nitro Debtors or their estates under §§ 502(d), 544, 545, 547, 548, 550 and 553 and any other avoidance actions under the Bankruptcy Code (collectively, the "**Avoidance Actions**"); (ii) commercial tort claims or any proceeds thereof; (iii) Titled Vehicles or any proceeds thereof; or (iv) property received or recovered in respect of any Avoidance Actions, whether by judgment, settlement or otherwise, whether pursuant to federal law or applicable state law (collectively, "**Avoidance Action Proceeds**").

b. Superpriority administrative expense claims (the "**Superpriority Claims**") under §§ 503 and 507 against the Nitro Debtors' estates to the extent that the Adequate Protection Liens do not adequately protect against the diminution in value of the Prepetition Collateral, if any, which Superpriority Claims, if any, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, §§ 503(b), 507(a), 507(b), 546(c), 726, 1113 and 1114, or otherwise and including those resulting from the conversion of this case pursuant to § 1112. The Superpriority Claims shall, for purposes of § 1129(a)(9)(A), be payable from and have recourse to all prepetition and postpetition property of the Nitro Debtors and all proceeds thereof, excluding however, Avoidance Action Proceeds.

c. The Nitro Debtors shall comply with all reporting requirements set forth in the Loan Documents and shall file monthly operating reports with the Court each month as required by the U.S. Trustee and serve such reports on Vectra. Additionally, the Nitro Debtors shall timely report and shall provide to Vectra on a weekly basis (commencing December 1, 2021 and every week thereafter): collection reports of accounts receivable and cash sales; a listing of new accounts receivable and invoices relating to the same; an aging report of accounts receivable and accounts payable; a cash flow report for all periods since the Petition Date, including a comparison of actual results to the projections set forth in the Budget; and any other information Vectra may reasonably request.

d. The Nitro Debtors shall maintain insurance as required by the Loan Documents and Security Documents on all insurable property now or hereafter owned by it against such risks and to the extent customary in its industry, which shall include, but not be limited to, insurance on all real property and improvements, equipment, and inventory, against all reasonably insurable hazards. The Nitro Debtors shall further maintain or cause to be maintained public liability and worker's compensation insurance, in reasonable amounts.

e. On an interim basis until a final hearing on the Motion, the Nitro Debtors, with the consent of the Vectra, may keep and maintain their existing accounts open with

Vectra as debtor-in-possession accounts and the Nitro Debtors shall segregate, remit, and deposit all cash receipts, Cash Collateral and all proceeds from the sale, transfer or other disposition of the and all other proceeds of such Prepetition Collateral of any kind which is now or shall come into the possession or control of the Nitro Debtors, or to which the Nitro Debtors are now or shall become entitled, into those debtors in possession bank accounts (collectively, the "**Deposit Account**"), and such collections and proceeds (a) shall be subject to and (b) shall be treated in accordance with the attached proposed Agreed Interim Cash Collateral Order. The Nitro Debtors shall not comingle the Cash Collateral, or the proceeds thereof, with any other funds. All funds deposited in the Deposit Account shall be deemed Cash Collateral.

23. The Nitro Debtors prepared a cash flow budget setting forth all projected cash receipts and cash disbursements for operations on a weekly basis during the first thirteen (13) weeks (the "**Budget Period**") of the Nitro Debtors' chapter 11 cases (as such budget may be modified from time to time by the Debtor, the "**Initial Approved Budget**"), a copy of which is attached hereto as **Exhibit A**. As set forth in the Initial Approved Budget, the Nitro Debtors intend to use Cash Collateral for, among other things, critical, necessary ongoing operational expenses, insurance, employee payroll and payroll expenses, professional services, supplies, maintenance and repairs, taxes, and utilities, and administrative costs and expenses of the Nitro Debtors incurred in the chapter 11 cases. The Nitro Debtors will adhere to the Initial Approved Budget during the Budget Period, subject to a permitted variance between the aggregate actual disbursements on a consolidated basis and the amounts projected in the Approved Budget of 10% in the aggregate, measured every week on a rolling basis. The Initial Approved Budget was relied upon by Vectra in consenting to the terms and conditions in the Agreed Interim Cash Collateral Order and the Nitro Debtors' use of Cash Collateral.

24. The terms and conditions on which the Nitro Debtors may use Cash Collateral have been carefully designed to meet the dual goals of §§ 361 and 363. If the Agreed Interim Cash Collateral Order is entered, the Nitro Debtors will have ample working capital to operate their businesses and provide an opportunity to maximize value for the benefit of stakeholders. At the same time, consistent with the purposes underlying the provision of adequate protection, the proposed Agreed Interim Cash Collateral Order provides Vectra with adequate protection (as set forth in detail above) to protect it from any diminution in value during the chapter 11 cases

25. The Nitro Debtors believe the terms of the Cash Collateral arrangement described herein and in the proposed Agreed Interim Cash Collateral Order are fair and reasonable, reflect the Nitro Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms concerning the Nitro Debtors' use of Cash Collateral as provided for in the proposed Agreed Interim Cash Collateral Order were negotiated in good faith and at arms' length between the Nitro Debtors and Vectra. Further, Vectra consents to the use of Cash Collateral under the terms of the proposed Agreed Interim Cash Collateral Order in good faith as that term is used in § 363 of the Code and is entitled to the benefits attendant to such a finding.

## REQUEST FOR EXPEDITED HEARING FOR INTERIM RELIEF
## UNDER FED R. BANKR. P. 4001(b)(2) and L.B.R. 4001-1(b)

26. Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure provides:

The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a preliminary hearing before such 14-day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(b)(2).

27. Local Bankruptcy Rule 4001-2(b) provides:

When Financing Motions are filed with the Court on or shortly after the date of the entry of the order for relief pursuant to L.B.R. 2081-1, the Court may grant interim relief pending review by the interested parties of the proposed debtor-in-possession financing arrangements. Such interim relief is intended to avoid immediate and irreparable harm to the estate pending a final hearing. The Court may deny the interim relief requested in the absence of a reasonable opportunity to object.

L.B.R. 4001-2(b).

28. In this case, immediate and irreparable harm would result if the relief requested in the motion is not granted on an interim basis pending the Final Hearing. The Nitro Debtors have a critical need for use of Cash Collateral to pay operating expenses associated with its business operations. The Nitro Debtors lack sufficient available sources of working capital and financing to operate, reorganize or effectuate an orderly wind-down of its remaining business. Use of the Cash Collateral is necessary to the Nitro Debtors' ability to preserve and maintain going-concern value of their businesses for the benefit of creditors and all parties in interest.

29. Failure to grant the relief requested herein on an interim basis would result in immediate and irreparable harm to the Debtor's estate. Without the use of the Cash Collateral, the Nitro Debtors will have insufficient funding to permit, among other things, the orderly continuation of the operation of its businesses, maintain business relationships with vendors, suppliers and customers, make payroll, and satisfy other working capital needs and other costs associated with Nitro Debtors' business operations. Absent the relief requested herein, the Nitro Debtors' operations will be brought to an immediate halt, with damaging consequences for the Nitro Debtors' and their bankruptcy estates and creditors. Accordingly, the use of Cash Collateral during the interim period is necessary to avoid immediate and irreparable harm to the Nitro Debtors' bankruptcy estates.

30. Based on the foregoing, the Nitro Debtors respectfully submit the requirements

of Fed. R. Bankr. P. 4001(b)(2) and L.B.R. 4001-2(b) supporting an expedited preliminary hearing and immediate cash collateral availability on an interim basis are satisfied. Accordingly, the Nitro Debtors seek immediate authority to use Cash Collateral, pursuant to the terms and conditions in the Interim Order to prevent immediate and irreparable harm to the Nitro Debtors' estate pending the Final Hearing pursuant to Fed. R. Bankr. P. 4001(b)(2) and L.B.R. 4001-2(b).

## RESERVATION OF RIGHTS

31. Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Nitro Debtors; (b) a waiver of the Nitro Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to § 365; or (e) otherwise affect the Nitro Debtors' rights under § 365 to assume or reject any executory contract with any party subject to this motion.

## NOTICE

32. In accordance with L.B.R. 2081-1(b), Debtor NITROcrete, LLC filed contemporaneously with this motion a *Motion Seeking Expedited Entry of Orders and Notice of Impending Hearing Thereon* (the "**Motion for Expedited Hearing**") in its chapter 11 case, case no. 21-15739. In accordance with L.B.R. 2081-1(b), a copy of the Agreed Interim Cash Collateral Order filed with this motion, along with the Motion for Expedited Hearing, L.B.F. 2081-1.1 Cover Sheet for Motion Seeking Expedited Entry of Order(s) and Notice of Impending Hearings Thereon, First Day Declaration, L.B.R. 2081-1.2 Notice of Filing of Chapter 11 Debtor's Motion Seeking Expedited Entry of Order(s), and L.B.R. 2081-1.3 Response and Request for Notice of Hearing, will be served by hand delivery, over-night mail, facsimile, or email to: (i) the Office of the United States Trustee; (ii) the 20 largest unsecured creditors; (iii) all secured creditors; (iv) the IRS and other relevant government agencies; (v) all parties who have requested notice; and (vi) any party whose interest in property of the estate will be directly affected by the relief requested in this motion.

33. In accordance with Fed. R. Bankr. P. 4001(b)(1)(C) and L.B.R. 4001-2, a copy of this motion, and all attachments and the Agreed Interim Cash Collateral Order will be served on the Office of the United States Trustee, Vectra and the 20 largest unsecured creditors.

## CONCLUSION

**WHEREFORE,** the Debtor respectfully requests, pursuant to § 362(c)(2)(A), Fed. R. Bankr. P. 4001(b) and 9014, and L.B.R. 4001-2, 2081-1 and 9013-1, entry of an order on an expedited basis, substantially in the form of the Agreed Interim Cash Collateral Order attached hereto, authorizing use of cash collateral on an interim basis, granting adequate protection to Vectra in connection therewith, entry of a final order authorizing use of cash collateral, setting a Final Hearing on use of Cash Collateral, and granting related relief., and (c) grant such other and further relief as may be just and proper.

Dated: November 18, 2021

Respectfully submitted,

MARKUS WILLIAMS YOUNG & HUNSICKER LLC

By: */s/ Matthew T. Faga*
James T. Markus, # 25065
Matthew T. Faga, # 41132
Zachary G. Sanderson, #52899
William G. Cross, #52952
1775 Sherman Street, Suite 1950
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
Email: jmarkus@markuswilliams.com
Email: mfaga@markuswilliams.com
Email: zsanderson@markuswilliams.com
Email: wcross@markuswilliams.com

*Proposed Counsel for the Debtor-In-Possession*