**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| NITROCRETE, LLC | ) | Case No. 21-15739-KHT |
| EIN: 84-4321060 | ) | |
| | ) | Chapter 11 |
| Debtor-in-Possession. | ) | |
| | ) | |

**MOTION FOR ENTRY OF AN ORDER AUTHORIZING IMPLEMENTATION OF KEY EMPLOYEE RETENTION PLAN FOR NON-INSIDER EMPLOYEES AND AUTHORIZING PAYMENTS THEREUNDER**

NITROcrete, LLC, debtor and debtor in possession herein (the "**Debtor**") in the above-referenced chapter 11 case, by and through the undersigned proposed counsel, hereby submits this *Motion for Entry of an Order Authorizing Implementation of Key Employee Retention Plan for Non-Insider Employees and Authorizing Payments Thereunder* (the "**Motion**"). In support of this Motion, the Debtor states as follows:[1]

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Colorado (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 363(b) and 503(c).

**BACKGROUND**

3. On November 18, 2021 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado. On the Petition Date, voluntary chapter 11 petitions were also filed in this Court by Nitro Holdings, LLC, the parent of the Debtor, and NITROcrete IP, LLC, NITROcrete Equipment, LLC, and NITROcrete Holdings, LLC, each an affiliate of the Debtor (collectively with the Debtor, the "**Nitro Debtors**").

4. The Debtor is authorized to operate its business and manage its affairs as a debtor-in-possession under §§ 1107(a) and 1108. No creditors' committee has been appointed in this

---

[1] Unless otherwise specified, all references herein to "Section," "§," "Bankruptcy Code" and "Code" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

{Z0370956/1}                                                            1

case by the Office of the United States Trustee, nor has any trustee or examiner been requested or appointed.

5. A description of the Debtor's business, the reasons for filing this chapter 11 case and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set more fully described in the *Declaration of Kathleen M. Walton in Support of First Day Relief* (the "**First Day Declaration**"), which the Debtor hereby adopts and incorporates as if fully set forth herein.

6. The Debtor also adopts and incorporates by reference the description of the Debtor's and the Nitro Debtors' workforce as it existed on the Petition Date as set forth in the Debtor's *Motion for Authority to (A) Pay Prepetition Employee Wages, Salaries and Compensation (B) Pay All Costs and Expenses Related to Such Payments, and (C) Authorizing Financial Institutions to Honor Such Payments* [Docket No. 15] (the "**Prepetition Wages Motion**").

7. The Debtor determined, in the exercise of its reasonable business judgment, it is necessary and appropriate to implement a key employee retention plan (the "**KERP**"), attached hereto as **Exhibit A** and as discussed below, to retain certain non-insider employees (the "**KERP Employees**") critical to the Debtor's ability to continue effective business operations post-petition and without the loss of valuable and specialized skill and knowledge during the chapter 11 case. The KERP was established to retain KERP Employees who are critical to the continued operation of the company, remain in the employment of the company throughout its reorganization process, or, alternatively, through the completion of a sale to a new ownership group. The Debtor believes retention of the KERP Employees will enhance the estate. A redacted list of the KERP Employees under the KERP is attached hereto as **Exhibit A-2**. None of the KERP Employees are officers, directors, or managers of the Debtor or "insiders" of the Debtor under § 101(31).

8. The KERP was formulated in consultation with the Debtor's independent financial advisor, professional advisors, and the KERP has been approved by the Debtor's Board of Directors, in consultation with and with the consent of Vectra Bank ("**Vectra**"), the Debtor's senior secured lender.

## RELIEF REQUESTED

9. By this Motion, the Debtor respectfully requests the Court enter an order, pursuant to §§ 105(a), 363(b) and 503(c)(3), approving the KERP as described herein for the benefit of the KERP Employees and authorizing the Debtor to make payments to KERP Employees under the terms of the KERP.

10. The Debtor's KERP Employees are individuals who have valuable and specialized knowledge of the Debtor's business operations, systems, and commercial and client relationships, and who are integral to the Debtor's ability to maintain its operations and cash

flow on a post-petition basis. Without the KERP, the Debtor believes it would likely be unable to retain the KERP Employees, especially given the commencement of the chapter 11 case. The KERP Employees are therefore essential to the Debtor's reorganization efforts in this chapter 11 case. Thus, the Debtor believes it is critical to retain the KERP Employees during the pendency of this chapter 11 case to avoid disruption of and harm to the Debtor's operations post-petition and to ensure maximized recovery for the creditors of the estate.

11. With the assistance of Michael Staheli and Cordes & Company, the Debtor's independent financial advisor,[2] the Debtor's senior management, and in consultation with Vectra, the Debtor developed the proposed KERP to provide sufficient incentives for the KERP Employees to remain with the Debtor, without paying an amount greater than necessary to achieve their retention. The Debtor considered, among other considerations, the specific KERP Employees, the specific services each provides, the potential risk of each KERP Employee leaving for employment elsewhere, including at Debtor's competitors, the incremental cost to the Debtor of replacing the KERP Employees at this juncture, and the necessity of each KERP Employee to the Debtor's sale and reorganization efforts.

12. <u>Exhibit A</u> attached hereto discusses the terms of the KERP as approved by the Debtor's Board of Directors. <u>Exhibit A-2</u> attached to this Motion identifies the specific KERP Employees and the associated cash bonus compensation (the "**KERP Bonus**") each will receive if that KERP Employee remains in the employment of the Debtor until the reorganization has been finalized or the sale of the company has been completed. All staff, including KERP Employees who may be entitled to receive a KERP Bonus, employed by the Debtor during the chapter 11 case will continue to earn his or her normal salary or hourly wage for hours worked. Any KERP Employee who may be entitled to receive a KERP Bonus who voluntarily leaves the employment of the Debtor prior to the date of sale or reorganization will not be eligible for the KERP Bonus. Any KERP Employee who may be entitled to receive a KERP Bonus who is terminated by the Debtor for performance reasons prior to the date of the sale or reorganization will not be eligible for the KERP Bonus.

13. The Debtor, in its business judgment and with the approval of its Board of Directors and in consultation with the Debtor's independent financial advisor, professional advisors, and senior secured lender, believes the terms of the KERP terms are reasonable and appropriate based on these considerations and the circumstances of this case.

## BASIS FOR RELIEF REQUESTED

14. Section 503(c)(1) of the Bankruptcy Code prohibits payments to insiders of a debtor for the purpose of incentivizing such insider to remain with the debtor's business unless certain evidentiary requirements are satisfied. Section 503(c)(1) provides:

---

[2] Contemporaneously with this Motion, the Debtor filed its *Application to Employ Cordes & Company as Financial Advisor to the Debtor-in-Possession* (the "**Cordes Application**"), whereby the Debtor seeks authorization to retain Michael Staheli and Cordes & Company as its financial advisor during this chapter 11 case.

{Z0370956/1 } 3

(c) Notwithstanding subsection (b), there shall neither be allowed, nor paid—

(1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that—

(A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;

(B) the services provided by the person are essential to the survival of the business; and

(C) either—

(i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or

(ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred[.]

11 U.S.C. § 503(c)(1).

15. Section 101(31)(B) of the Bankruptcy Code defines who is an "insider" in the context of a corporate debtor. If the debtor is a corporation, the term "insider" includes: "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control of the debtor." 11 U.S.C. § 101(31)(B)(i)-(vi).

16. Here, none of the KERP Employees are "insiders" of the Debtor under § 101(31)(B). The examples of an "insider" under § 101(31) is illustrative, not exhaustive. *In re Borders Group, Inc.*, 453 B.R. 459, 469 (Bankr. S.D.N.Y. 2011). "Insider status can also be determined on a case-by-case basis based on the totality of the circumstances, including the degree of an individual's involvement in a debtor's affairs. In such cases, insiders must have 'at least a controlling interest in the debtor . . . or exercise sufficient authority over the debtor so as

to unqualifiably dictate corporate policy and the disposition of corporate assets." *Id*. (quoting *In re Babcock Dairy Co.*, 70 B.R. 657, 661 (Bankr. N.D. Ohio 1986) (other internal citations omitted). Here, none of the KERP Employees are "insiders" under the statutory definition of § 101(31)(B), nor do any of the KERP Employees have a controlling interest in the Debtor or exercise any authority over the corporate policy of the Debtor or the disposition of the Debtor's assets.

17. Because the KERP Employees are not insiders of the Debtor and the KERP proposed herein is not intended to incentivize any insider of the Debtor to remain with the Debtor during the chapter 11 case, § 503(b)(1) does not apply by that section's plain terms. Instead, the KERP must be satisfy the requirements of § 503(c)(3). *In re Residential Capital, LLC*, 491 B.R. 73, 85 (Bankr. S.D.N.Y. 2013) (where KERP participants are not insiders under § 101(31)(B) the court need only determine with the KERP satisfies § 503(c)(3)); *In re Borders Group, Inc.*, 453 B.R. at 473 (while KERP employees were not insiders under § 101(31) the KERP must still be analyzed under § 503(c)(3) because it is not an ordinary course transaction).

18. Section 503(c)(3) of the Bankruptcy Code provides:

(c) Notwithstanding subsection (b), there shall neither be allowed, nor paid—

. . .

(3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. § 503(c)(3). A KERP for non-insider employees of a debtor can be approved under § 503(c)(3) if the program is "justified by the facts and circumstances of the case." *In re Am. Eagle Energy Corp.*, 2016 Bankr. LEXIS 2366, at * (Bankr. D. Colo. June 23, 2016); *In re Residential Capital, LLC*, 491 B.R. at 85.

19. "Courts have held that the 'facts and circumstances' language of section 503(c)(3) creates a standard no different than the business judgment standard under section 363(b)." *In re Velo Holdings, Inc.*, 472 B.R. 201, 212 (Bankr. S.D.N.Y. 2012); *see also In re First Energy Sols. Corp.*, 591 B.R. 688, 695 (Bankr. N.D. Ohio 2018) ("Most bankruptcy courts that have considered the issue have concluded that it adds nothing to the preexisting business judgment standard, and therefore regardless of Section 503(c)(3), the business judgment standard controls.") (citing cases); *In re Borders Group, Inc.*, 453 B.R. at 474 ("the legal standard under section 363(b) is no different than section 503(c)(3)"); *but see In re Pilgrim's Pride Corp.*, 401 B.R. 229, 236-37 (Bankr. N.D. Tex. 2009) (standard for approval under section 503(c)(3) is higher than the business judgment test; if payments to employees outside the ordinary course were only subject to the business judgment test, then the language of section 503(c)(3) would be rendered meaningless).

20. Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under well-settled case law from this and other jurisdictions, courts will approve a debtor's proposed use, sale, or lease of estate property if the proposed use represents a reasonable business judgment on the part of the debtor. *See, e.g., In re Psychometric Sys., Inc.*, 367 B.R. 670, 675 (Bankr. D. Colo. 2007) (debtor's business judgment in a section 363 sale to be given "great deference"); *In re Castre, Inc.*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under § 363(b) when there is a legitimate business justification); *In re America West Airlines, Inc.*, 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) ("It is a proper use of a Debtor's business judgment to propose bonuses for employees who helped propel the debtor successfully through the confirmation process.")

21. In determining whether a non-insider KERP employee retention plan meets the business judgment test for purposes of § 363(b) and § 503(c)(3), courts have considered the following non-exclusive factors:

- Is there a reasonable relationship between the plan proposed and the results to be obtained, *i.e.*, will the KERP employee stay for as long as it takes for the debtor to reorganize or market its assets, or, in the case of a performance incentive, is the plan calculated to achieve the desired performance?

- Is the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential?

- Is the scope of the plan fair and reasonable; does it apply to all employees; does it discriminate unfairly?

- Is the plan or proposal consistent with industry standards?

- What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which KERP employees need to be incentivized; what is available; what is generally applicable in a particular industry?

- Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?

*In re Dana Corp.*, 358 B.R. 567, 576-577 (Bankr. S.D.N.Y. 2006); *In re Residential Capital, LLC*, 491 B.R. at 84; *In re Borders Group, Inc.*, 453 B.R. at 474; *In re Dewey & Leboeuf LLP*, 2012 Bankr. LEXIS 3484, *11-12 (Bankr. S.D.N.Y. 2012). Here, the Debtor submits the proposed KERP for the non-insider KERP Employees is necessary and appropriate in the Debtor's business judgment and meets each of the foregoing factors.

22. First, there is a reasonable relationship between the KERP Bonuses proposed under the KERP and the results to be obtained. The KERP Bonuses proposed under the KERP are intended to retain those certain KERP Employees the chapter 11 case. These KERP Employees are essential to the Debtor's business operations and possess specialized knowledge of the Debtor's business operations necessary for ongoing operations and a successful reorganization of the Debtor's affairs. Failure to retain the KERP Employees would cause the Debtor to incur irreparable harm, including, but not limited to, a potential shut down of business operations and/or significant costs to replace the KERP Employees. The continuity afforded to the Debtor's operations through retention of the KERP Employees preserves their knowledge of the Debtor's business operations and increases the likelihood of a successful sale or reorganization under chapter 11.

23. Further, the KERP Bonuses will not be paid until the Debtor's reorganization is finalized or a sale of the company is realized. Any KERP Employee who voluntarily leaves the employment of the Debtor prior to the date of sale or reorganization is not eligible for the KERP Bonus. Any KERP Employee terminated by the Debtor for performance reasons prior to the date of the sale or reorganization is not eligible for the KERP Bonus.

24. Second, the Debtor submits the KERP is reasonable both in the context of the Debtor's assets, liabilities and earnings potential, and with respect to cost and relation to market and industry standards.

25. Third, with the assistance of Cordes, the Debtor's independent financial advisor, the Debtor evaluated its need for retention of the KERP Employees to continue effective operations during the chapter 11 case based on several factors, including, but not limited to, each KERP Employee's current compensation, location, his or her role in the chapter 11 reorganization process, his or her role in the Debtor's ongoing business operations, and the risk each KERP Employee may find employment elsewhere including with a competitor.

26. Lastly, the Debtor received independent counsel and advice in creating the KERP. Prior to the Petition Date, the Debtor retained Cordes as its financial advisor to advise and assist the Debtor on a variety of topics, including, but not limited to, assembling financial information necessary to determine the value of the Debtor's assets, projecting the Debtor's income and expenses to facilitate a discounted cash flow valuation and to generate weekly cash flow projections, estimating a pro forma operating year when economic conditions normalize. Cordes has also advised the Debtor with respect to its pre-petition restructuring efforts and general strategy for reorganization within chapter 11. Cordes, as a financial advisor independent from the Debtor's Board of Directors and managers, also advised the Debtor with respect to formulation of the KERP and the KERP Employees necessary for retention during the chapter 11 case and ensuring the KERP terms are fair and consistent with industry standards. Such advise has provided the Debtor with independent due diligence in creating the KERP.

27. Based on the foregoing, the Debtor submits the KERP meets the standard for approval of such plans under the standards of § 363(b) and § 503(c)(3). As discussed above, the

KERP was formulated in consultation with the Debtor's independent financial advisor, professional advisors, and vetted with Vectra, the Debtor's senior secured lender, who agrees that the terms of the KERP are reasonable and necessary for the Debtor's reorganization under chapter 11.

28. Further, § 105(a) empowers a bankruptcy court to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). The Debtor respectfully submits that an order approving the KERP is necessary and appropriate under the circumstances because it will assist the Debtor in performing its duties under the Bankruptcy Code, and its duty to maximize value by continuing business operations and incentivizing the KERP Employees to remain with the Debtor and continue supporting the Debtor's restructuring efforts in these cases.

29. Relief similar to that requested in this Motion has been granted in other bankruptcy cases including within this District. *See*, *e.g.*, *In re Willowood USA Holdings, LLC, et al.*, Case No. 19-11079-KHT, Dkt. No. 194 (Bankr. D. Colo. March 29, 2019); *In re Atna Resources, Inc., et al.*, Case No. 15-22848-JGR, Dkt. No. 316 (Bankr. D. Colo. Jan. 28, 2016); *In re Midway Gold US, Inc.*, Case No. 15-16835-MER, Dkt. No. 298 (Bankr. D. Colo. Sept. 11, 2015).

## CONCLUSION

WHEREFORE, the Debtor respectfully request entry of an Order, pursuant to §§ 105(a), 363(b) and 503(c)(3) and substantially in the form proposed herewith: (i) approving the KERP as described for the benefit of the KERP Employees; (ii) authorizing the Debtor to make payments to KERP Employees under the terms of the KERP; (iii) directing that KERP Bonuses be paid from the proceeds of a sale of the Debtor's assets or be allowed as an administrative expense claim under § 503 under a confirmed plan of reorganization; and (iv) entering such other and further relief as the Court deems appropriate.

Dated: November 18, 2021

Respectfully submitted,

MARKUS WILLIAMS YOUNG & HUNSICKER LLC

By: */s/ Matthew T. Faga*
James T. Markus, # 25065
Matthew T. Faga, # 41132
Zachary G. Sanderson, #52899
William G. Cross, #52952
1775 Sherman Street, Suite 1950
Denver, Colorado 80203-4505
Telephone (303) 830-0800

{Z0370956/1 } 8

Facsimile (303) 830-0809
Email: jmarkus@markuswilliams.com
Email: mfaga@markuswilliams.com
Email: zsanderson@markuswilliams.com
Email: wcross@markuswilliams.com

*Proposed Counsel for the Debtor-In-Possession*

# CERTIFICATE OF SERVICE

**9013-1 Certificate of Service of Motion, Cover Sheet, Exhibits, Notice and Proposed Order**

The undersigned certifies that on November 18, 2021, true and correct copies of the **MOTION FOR ENTRY OF AN ORDER AUTHORIZING IMPLEMENTATION OF KEY EMPLOYEE RETENTION PLAN FOR NON-INSIDER EMPLOYEES AND AUTHORIZING PAYMENTS THEREUNDER**, all attachment thereto, proposed order and **L.B.F. 9013-1.1 Notice of Motion** were filed and served via CM/ECF pursuant to L.B.R. 9013-1 and 9036-1 as indicated below on the following:

Office of the U.S. Trustee
Byron G. Rogers Federal Building
1961 Stout St., Ste. 12-200
Denver, CO 80294

**2002-1 Certificate of Service of Notice**

The undersigned further certifies that on November 18, 2021, I directed BMC Group, Inc., the Debtor's proposed noticing agent, to serve a copy of the **L.B.F. 9013-1.1 Notice of Motion** for the **MOTION FOR ENTRY OF AN ORDER AUTHORIZING IMPLEMENTATION OF KEY EMPLOYEE RETENTION PLAN FOR NON-INSIDER EMPLOYEES AND AUTHORIZING PAYMENTS THEREUNDER** by prepaid first-class mail in accordance with FED. R. BANKR. P. 2002 and 11 U.S.C. § 342(c) (if applicable) on parties in interest contained on the court's Creditor Address Mailing Matrix for the above captioned case, obtained from PACER on November 18, 2021. BMC Group, Inc. will file a separate certificate of service and service list reflecting service of the L.B.F. 9013-1.1 Notice of Motion/Application.

Dated: November 18, 2021  */s/ Serina Schaefer*
Markus Williams Young & Hunsicker LLC
1775 Sherman Street, Suite 1950
Denver, CO 80203
Telephone: 303-830-0800