UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

| | |
|---|---|
| In re )<br>)<br>NITROCRETE, LLC )<br>EIN: 84-4321060 )<br>)<br>)<br>Debtor-in-Possession. )<br>) | Case No. 21-15739-KHT<br><br>Chapter 11 |

### MOTION FOR ENTRY OF AN ORDER AUTHORIZING IMPLEMENTATION OF KEY EMPLOYEE INCENTIVE PLAN AND AUTHORIZING PAYMENTS THEREUNDER

NITROcrete, LLC, debtor and debtor in possession herein (the "**Debtor**") in the above-referenced chapter 11 case, by and through the undersigned proposed counsel, hereby submits this *Motion for Entry of an Order Authorizing Implementation of Key Employee Incentive Plan and Authorizing Payments Thereunder* (the "**Motion**"). In support of this Motion, the Debtor states as follows:[1]

### JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Colorado (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 363(b) and 503(c).

### BACKGROUND

3. On November 18, 2021 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado. On the Petition Date, voluntary chapter 11 petitions were also filed in this Court by Nitro Holdings, LLC, the parent of the Debtor, and NITROcrete IP, LLC, NITROcrete Equipment, LLC, and NITROcrete Holdings, LLC, each an affiliate of the Debtor (collectively with the Debtor, the "**Nitro Debtors**").

4. The Debtor is authorized to operate its business and manage its affairs as a debtor-in-possession under §§ 1107(a) and 1108. No creditors' committee has yet been appointed in

---

[1] Unless otherwise specified, all references herein to "Section," "§," "Bankruptcy Code" and "Code" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

{Z0371136/1}    1

this case by the Office of the United States Trustee, nor has any trustee or examiner been requested or appointed.

5. A description of the Debtor's business, the reasons for filing this chapter 11 case and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set more fully described in the *Declaration of Kathleen M. Walton in Support of First Day Relief* [Docket No. 18] (the "**First Day Declaration**"), which the Debtor hereby adopts and incorporates as if fully set forth herein.

6. The Debtor determined, in the exercise of its reasonable business judgment, that it is necessary and appropriate to implement a key employee inventive plan (the "**KEIP**"), attached hereto as **Exhibit A** and as discussed below, to incentivize certain executive level staff members of the Debtor (the "**KEIP Insiders**") to continue contributing their specialized skills and knowledge of the Nitro Debtors' business operations and affairs, critical to the day-to-day operation of the Nitro Debtors, necessary to achieve an effective and successful reorganization under chapter 11. The KEIP was established and formulated to incentivize the KEIP Insiders, who are critical to the continued operation of the Debtor, to maximize the value of the company throughout the sale or reorganization process for the benefit of the Debtor's creditors.

7. Each employee identified as a KEIP Insider performs essential functions for the Nitro Debtors, and each is essential to the Nitro Debtors' chapter 11 cases. A redacted list of the KEIP Insiders and the incentive payment structure under the KEIP is attached hereto as **Exhibit A-2**.

8. Through this Motion and the proposed KEIP, the Debtors seek authority to compensate the KEIP Insiders with an incentive bonus to be paid only upon the consummation of a sale of substantially all the Nitro Debtors' assets, or, alternatively, upon confirmation of a plan of reorganization based on the value of such transactions. The Debtor's primary goal in formulating and implementing the KEIP is to create value for the Nitro Debtors' bankruptcy estates by incentivizing the KEIP Insiders to give their highest and best performances to achieve a sale or confirmation of a chapter 11 plan of reorganization that yields maximum value for the estate.

9. The KEIP was formulated in consultation with the Debtor's independent financial advisor, professional advisors, and the KEIP has been approved by the Debtor's Board of Directors, in consultation with and with the consent of Vectra Bank ("**Vectra**"), the Debtor's senior secured lender.

## RELIEF REQUESTED

10. By this Motion, the Debtor respectfully requests the Court enter an order, pursuant to §§ 105(a), 363(b) and 503(c)(3), approving the KEIP as described herein for the benefit of the KEIP Insiders and authorizing the Debtor to make payments to KEIP Insiders under the terms of the KEIP.

11. The KEIP Insiders are individuals who have valuable and specialized knowledge of the Debtor's business operations, systems, and commercial and client relationships, and who are integral to the Debtor's ability to maintain its operations and cash flow on a post-petition basis. The KEIP Insiders are officers, directors, and/or managers of the Nitro Debtors, and otherwise qualify as "insiders" under the meaning of § 101(54). The KEIP Insiders are necessary essential to maximizing the value of the bankruptcy estates and the Nitro Debtors' successful reorganization efforts in this chapter 11 case, whether through a sale of substantially all the Nitro Debtors' assets or confirmation of a chapter 11 plan of reorganization.

12. With the assistance of Michael Staheli and Cordes & Company, the Debtor's independent financial advisor,[2] and the Debtor's senior management, Board of Directors, and in consultation with Vectra, the Debtor developed the proposed KEIP to provide sufficient incentives for the KEIP Insiders to utilize their knowledge, skill, and understanding of the Nitro Debtors' business operations to maximize the value of the Nitro Debtors' businesses and bankruptcy estate, reach and achieve certain measurable performance goals, metrics, and milestones with respect to the Nitro Debtors' reorganization efforts. Achieving the goals in the chapter 11 cases will have a positive impact on the overall outcome of the chapter 11 cases for the benefit of creditors and stakeholders.

13. Exhibit A attached hereto discusses the terms of the KEIP as approved by the Debtor's Board of Directors. As set forth on Exhibit A, the KEIP is established to incentivize executive level staff members – the KEIP Insiders – who are critical to the continued operation of the company to maximize the value of the company throughout the sale or reorganization process for the benefit of the company's creditors.

14. Exhibit A-2 attached to this Motion identifies the specific KEIP Insiders and the cash bonuses (the "**KEIP Bonuses**") each may be entitled to receive based on the results in the chapter 11 cases. As set forth on Exhibit A-2, the KEIP Bonuses will be carved out from either: (i) the proceeds of a successful asset sale equal to the percentage of the "Final Sales Price"; or (ii) upon confirmation, and as set forth in a chapter 11 plan of reorganization, equal to the "Enterprise Value" of the reorganized company. Under the KEIP, the "Final Sales Price" is equal to the total consideration paid by a party for the company's equity, assets, or any portion of either, plus the assumption or payoff of any indebtedness, as approved by the Court. Under the KEIP, the "Enterprise Value" shall be equal to the sum of the following components:

    a. The total value of all cash, securities or other property paid at the closing of the acceptance of the strategic transaction;

    b. The total value all cash, security or other property contemplated to be paid following the acceptance of the strategic transaction (including contingent payments, holdbacks or deferred payments) to the company or its stockholders or

---

[2] Contemporaneously with this Motion, the Debtor filed its *Application to Employ Cordes & Company as Financial Advisor to the Debtor-in-Possession* (the "**Cordes Application**"), whereby the Debtor seeks authorization to retain Michael Staheli and Cordes & Company as its financial advisor during this chapter 11 case.

{Z0371136/1 } 3

      related entities of the company;

c. The amount of all indebtedness and "debt-like" or non-ordinary course liabilities (such as unfunded pension obligations, OPEB liabilities, environmental liabilities, tax obligations or similar liabilities) of the company or its related entities assumed by the acquirer in the strategic transaction; and,

d. All amounts paid to the company or its stockholders or related entities pursuant to any non-competition covenants or agreements, employment or consulting agreements, licensing or supply agreements or any similar arrangements.

15. Any KEIP Bonus shall be paid in full and in cash at closing of a sale or promptly following entry of an order confirming a chapter 11 plan of reorganization.

16. The KEIP proposed by the Debtor has been formulated to incentivize the KEIP Insiders to continue to perform critical tasks necessary to consummate a successful sale of the Nitro Debtors' assets or confirmation of a chapter 11 plan of reorganization. The ultimate outcome of the Nitro Debtors' chapter 11 cases, including a potential purchase price of the Nitro Debtors' assets, is dependent on the KEIP Insiders' performances during the chapter 11 cases.

17. The Debtor, in its business judgment and with the approval of its Board of Directors and in consultation with the Debtor's independent financial advisor, professional advisors, and senior secured lender, believes the terms of the KEIP terms are reasonable and appropriate based on these considerations and the circumstances of this case.

## BASIS FOR RELIEF REQUESTED

18. As a threshold matter, the KEIP is not subject to the restrictions set forth in § 503(c)(1). Section 503(c)(1) of the Bankruptcy Code prohibits payments to insiders of a debtor for the purpose of incentivizing such insider to remain with the debtor's business unless certain evidentiary requirements are satisfied. Section 503(c)(1) provides:

(c) Notwithstanding subsection (b), there shall neither be allowed, nor paid—

(1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of *inducing such person to remain with the debtor's business*, absent a finding by the court based on evidence in the record that—

(A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;

(B) the services provided by the person are essential to the survival of the business; and

>  (C) either—
>
>  (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or
>
>  (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred[.]

11 U.S.C. § 503(c)(1) (emphasis added). Based on the emphasized language above, by its plain terms § 503(c)(1) pertains to *retention* plans for insiders. *See In re Am. Eagle Energy Corp.*, 2016 Bankr. LEXIS 2366, at *6 (Bankr. D. Colo. 2016) (§ 503(c)(1) prohibits insider retention plans); *see also In re Residential Capital, LLC*, 478 B.R. 154, 171 (Bankr. S.D.N.Y. 2012) ("When a plan is designed to motivate employees to achieve specified performance goals, it is primarily incentivizing, and thus not subject to section 503(c)(1)."). Here, the KEIP is formulated to incentivize the KEIP Insiders to maximize the value of the Nitro Debtors' estates through a sale or chapter 11 plan of reorganization, rather than simply rewarding the KEIP Insiders for remaining with the Nitro Debtors during the chapter 11 cases.

19. Further, the KEIP is not subject to § 503(c)(2). Section 503(c)(2) provides:

>  (c) Notwithstanding subsection (b), there shall neither be allowed, nor paid—
>
>  . . .
>
>  (2) a severance payment to an insider of the debtor, unless—
>
>  (A) the payment is part of a program that is generally applicable to all full-time employees; and
>
>  (B) the amount of the payment is not greater than 10 times the amount of the mean severance pay given to nonmanagement employees during the calendar year in which the payment is made[.]

11 U.S.C. § 503(c)(2). Section 503(c)(2), by its plain terms, applies to severance payments to insiders. Here, the proposed incentive structure and payments under the KEIP are not tied to their termination of employment from the Nitro Debtors.

20. Instead, the KEIP is subject to scrutiny under § 363(b)(1) and § 503(c)(3). *In re Alpha Nat. Res., Inc.*, 546 B.R. 348, 356 (Bankr. E.D. Va. 2016) ("Incentive payments under a KEIP are governed by the more general provisions § 363(b)(1) and § 503(c)(3)."). Section 503(c)(3) of the Bankruptcy Code provides:

> (c) Notwithstanding subsection (b), there shall neither be allowed, nor paid—
>
> . . .
>
> (3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. § 503(c)(3). "[U]nder § 503(c)(3), a debtor is authorized to make payments to its officers and insiders that are not retentive in nature only if the payments are 'justified by the facts and circumstances of the case.'" *In re Alpha Nat. Res., Inc.*, 546 B.R. at 356; *see also In re Am. Eagle Energy Corp.*, 2016 Bankr. LEXIS 2366, at *6-23 (finding "bonuses proposed to be paid under the Plan are transfers outside the ordinary course of business that are fully 'justified by the facts and circumstances of the case.'") (quoting § 503(c)(3)).

21. "Courts have held that the 'facts and circumstances' language of section 503(c)(3) creates a standard no different than the business judgment standard under section 363(b)." *In re Velo Holdings, Inc.*, 472 B.R. 201, 212 (Bankr. S.D.N.Y. 2012); *see also In re First Energy Sols. Corp.*, 591 B.R. 688, 695 (Bankr. N.D. Ohio 2018) ("Most bankruptcy courts that have considered the issue have concluded that it adds nothing to the preexisting business judgment standard, and therefore regardless of Section 503(c)(3), the business judgment standard controls.") (citing cases); *see also In re Alpha Natural Res., Inc.*, 546 B.R. at 363 (finding "[t]he KEIP is within the sound business judgment of the Debtors."); *see also In re Borders Group, Inc.*, 453 B.R. at 473 ("the 'facts and circumstances' language of section 503(c)(3) creates a standard no different than the business judgment standard under section 363(b)."); *see also In re Global Home Prods., LLC*, 369 B.R. 778, 786 (Bankr. D. Del. 2007) (concluding terms and adoption of KEIP plan satisfied the business judgment test); *see also In re America West Airlines, Inc.*, 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) ("It is a proper use of a Debtor's business judgment to propose bonuses for employees who helped propel the debtor successfully through the confirmation process."); *but see In re Pilgrim's Pride Corp.*, 401 B.R. 229, 236-37 (Bankr. N.D. Tex. 2009) (standard for approval under § 503(c)(3) is higher than the business judgment test; if payments to employees outside the ordinary course were only subject to the business judgment test, then the language of § 503(c)(3) would be rendered meaningless).

22. Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under well-settled case law from this and other jurisdictions, courts will approve a debtor's proposed use, sale, or lease of estate property if the proposed use represents a

reasonable business judgment on the part of the debtor. *See, e.g., In re Psychometric Sys., Inc.*, 367 B.R. 670, 675 (Bankr. D. Colo. 2007) (debtor's business judgment in a section 363 sale to be given "great deference"); *In re Castre, Inc.*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004); *In re Martin*, 91 F.3d 389, 395 (3rd Cir. 1996); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3rd Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under § 363(b) when there is a legitimate business justification).

23. In determining whether a proposed key employee incentive plan satisfied the standards for approval under § 503(b), in *In re Am. Eagle Corp.*, Judge Howard R. Tallman (Ret.) of this Court analyzed the plan using nine factors or holdings set forth in *In re Alpha Natural Resources, Inc.*, 546 B.R. 348 (Bankr. E.D. Va. 2016):

(i) Is the scope of the KEIP reasonable?

(ii) Did the Debtor undertake suitable due diligence for adoption of the KEIP by an independent compensation committee?

(iii) Are the participants of the KEIP appropriate – do they have additional responsibilities than the ones they had prior to the filing of the bankruptcy?

(iv) Is the cost of the KEIP reasonable in the context of the debtor's assets, liabilities, and earnings potential?

(v) Is the KEIP designed to achieve the desired performance results?

(vi) Is the KEIP consistent with industry standards?

(vii) Does the KEIP fall within the fair and reasonable business judgment of the Debtor?

(viii) Is the KEIP a disguised KERP?

(ix) Does the KEIP satisfy the heightened standard set forth in *In re Pilgrim's Pride*?

*In re Am. Eagle Energy Corp.*, 2016 Bankr. LEXIS 2366, at *6-23. Here, the Debtor submits the proposed KEIP is a valid exercise of the Debtor's business judgment pursuant to § 363(b)(1) and § 503(c)(3) and meets each of the foregoing factors.

24. First, the scope of the proposed KEIP is reasonable under the facts and circumstances of the case. The terms of the KEIP and the KEIP Bonuses contemplated therein are reasonable in scope and cover and incentivize only three KEIP Insiders. The ultimate result of the Debtor's chapter 11 case is not certain – the Debtor may obtain a sale of the company or reorganization through a chapter 11 plan. The KEIP Bonuses are not a set amount regardless of

the outcome of the case, but instead depend on achieving certain objective metrics with respect to either a sale or restructuring transaction. The KEIP Insiders are being incentivized by maximizing the value of the Debtor's assets and the value returned to creditors and stakeholders.

25. Given their essential role as officers and senior management of the Debtor, the KEIP Insiders are best positioned to ensure the Debtor is able to secure the highest and best offer in a sale or, alternatively, to maximize value of the assets through a chapter 11 plan. Moreover, the KEIP Insiders have taken on substantial tasks and responsibilities to help effectuate and further a potential sale or reorganization, in addition to their existing responsibilities.

26. The Debtor submits the KEIP will incentivize the KEIP Insiders to preserve and maximize the value received for the Debtor's assets for the benefit of all stakeholders. Without the implementation of the KEIP, the KEIP Insiders may not be incentivized to perform optimally, which would be detrimental to creditors and the estate.

27. Second, the KEIP was formulated by the Debtor in consultation with the Debtor's independent financial advisor and professional advisors, and the Debtor has reviewed the proposed KEIP with Vectra, the Debtor's senior secured lender. The Debtor retained Cordes as its financial advisor to advise and assist the Debtor on a variety of topics, including, but not limited to, assembling financial information necessary to determine the value of the Debtor's assets, projecting the Debtor's income and expenses to facilitate a discounted cash flow valuation and to generate weekly cash flow projections, estimating a pro forma operating year when economic conditions normalize. Cordes has also advised the Debtor with respect to its pre-petition restructuring efforts and general strategy for reorganization within chapter 11. Cordes, as a financial advisor independent from the Debtor's Board of Directors and managers, also advised the Debtor with respect to formulation of the KEIP and the KEIP Insiders critical and necessary for the Debtor to achieve a sale of its assets or confirm and consummate a chapter 11 plan of reorganization under chapter 11 and ensuring the KEIP terms are fair and consistent with industry standards. Such advise has provided the Debtor with independent due diligence in creating the KEIP. Further, the KEIP Insiders did not play any role in formulating the terms of the KEIP or the payments contemplated under the KEIP.

28. Third, the KEIP Insiders are appropriate for the incentives under the KEIP. The KEIP Insiders hold operational leadership or corporate management positions with the Debtor. During the chapter 11 case, the responsibilities of the KEIP Insiders go beyond the duties and responsibilities they had prior to bankruptcy and were selected because they are critical to the chapter 11 process and maintaining the Debtor's business operations during the chapter 11 case while the sale or reorganization process is ongoing. Further, the KEIP Insiders are best positioned to ensure the Debtor can achieve the highest Final Sale Price or Enterprise Value in the chapter 11 case.

29. Fourth, the cost of the KEIP is reasonable. As reflected in <u>Exhibit A-2</u>, the total KEIP Bonuses range from $91,250 among the three KEIP Insiders, representing 1.25% of a Final Sales Price or Enterprise Value of $7,300,000, to a total of $300,000, representing 2.5% of a

Final Sales Price or Enterprise Value of $12,000,000. If the Final Sales Price or Enterprise Value is less than $7,300,000 then the KEIP Insiders receive no KEIP Bonuses. The amount of the KEIP Bonuses is reasonable in light of the potential Final Sales Price or Enterprise Value and the potential return to creditors from either a sale or chapter 11 plan. Moreover, the Debtor, in consultations with its professionals and advisors, determined that the KEIP Bonuses represent the bare minimum that must be offered to properly incentivize the KEIP Insiders. Accordingly, the payments under the KEIP are reasonable and a sound exercise of the Debtor's business judgment.

30. Fifth, the KEIP is designed to achieve the desired performance results. As discussed above, the KEIP Bonuses will not be paid unless the Final Sales Price or Enterprise Value achieves certain, measurable goals. If the Final Sales Price or Enterprise Value is less than $7,300,000 then the KEIP Insiders receive no KEIP Bonuses. The KEIP thus incentivizes the KEIP Insiders to provide their highest and best performances to reach the desired outcome of a successful sale or reorganization providing the maximum benefit to creditors and stakeholders.

31. Sixth, the KEIP is consistent with industry standards. The Debtor designed the KEIP in consultation with the Debtor's independent financial advisor and professional advisors, and the Debtor has reviewed the proposed KEIP with Vectra, the Debtor's senior secured lender. Based on such consultation, and a review of incentive plans approved in other chapter 11 cases, the Debtor concluded that the payments proposed pursuant to the KEIP is consistent with industry standards.

32. Seventh, the KEIP falls within the fair and reasonable business judgment of the Debtor. As discussed above, the KEIP Insiders are instrumental in maximizing the value of the Debtor's assets for the benefit of creditors and stakeholders and maximizing a potential Final Sale Price or Enterprise Value through a sale or chapter 11 plan. The KEIP, in turn, is designed to ensure that the KEIP Insiders are incentivized to give their highest and best performance to achieve these goals. Accordingly, the KEIP is fair and reasonable and represents a reasonable business judgment on the part of the Debtor.

33. Eighth, the KEIP is not a disguised KERP. The KEIP was designed and formulated to incentivize the KEIP Insiders to maximize the Final Sales Price or Enterprise Value for the benefit of creditors and stakeholders. The KEIP does not have an impermissible retention component – the KEIP Insiders are not entitled to the KEIP Bonuses merely for remaining employed by the Debtor. Rather, the KEIP Bonuses are incentives only available to the KEIP Insiders if the Final Sale Price or Enterprise Value is at least $7,300,000. While the KEIP Bonuses could have some retentive effect, that does not subject the KEIP to § 503(b)(1). *In re Am. Eagle Energy Corp.*, 2016 Bankr. LEXIS 2366, at *8; *In re Dana Corp.*, 358 B.R. 567, 571 (Bankr. S.D.N.Y. 2006) ("[B]ecause a plan has some retentive effect does not mean that the plan, overall, is retentive rather than incentivizing in nature.").

34. Lastly, in *In re Am. Eagle Energy Corp.* the Court did not expressly adopt the heightened standard set forth in *Pilgrim's Pride*. However, the Court did conclude the KEIP at

issue there did meet this heightened standard "whether or not it is a new factor to the *Alpha Natural Resources, Inc.* listing." *In re Am. Eagle Energy Corp.*, 2016 Bankr. LEXIS 2366, at *22-23. Likewise, in *In re Alpha Natural Res., Inc.*, the bankruptcy court did not expressly adopt that heightened standard, but instead concluded under either standard the KEIP would be approved. *In re Alpha Natural Res., Inc.*, 546 B.R. at 360 ("The Court need not decide between the two approaches, as it finds the Debtors' KEIP satisfies both standards.").

35. Nonetheless, the Debtor's proposed KEIP satisfies the heightened standard set forth in *In re Pilgrim's Pride*. In *Pilgrim's Pride*, the U.S. Bankruptcy Court for the Northern District of Texas set a higher bar for incentive bonus plans for insiders than the reasonable business judgment test would approve only if they were justified by the facts and circumstances of the case. *In re Pilgrim's Pride Corp.*, 401 B.R. at 236-37. According to Judge Tallman of this Court:

> [T]he higher standard is met based on the performance of the employees themselves. That factor is whether the employees claiming entitlement to a bonus under a KEIP actually performed their duties responsibly and competently so as to meet the required standards and to make crucial, necessary contributions to successfully achieving the desired goals.

*In re Am. Eagle Energy Corp.*, 2016 Bankr. LEXIS 2366, at *22-23. In *Alpha Natural Resources, Inc.*, the bankruptcy court concluded the proposed plan satisfied the heightened *Pilgrim's Pride* standard where the plan was designed to promote a successful result in the chapter 11 case by incentivizing the KEIP participants to preserve the value of the debtors' estates and maximize the return to creditors, incentivized the KEIP participants to achieve the performance goals quickly, the KEIP was designed to maximize value for the benefit of creditors, and the benefits from realization of the KEIP goals far exceeded the cost of the program. *In re Alpha Natural Res., Inc.*, 546 B.R. at 362-63. In this case, based on the foregoing, the Debtor submits the KEIP proposed herein meets this standard for approval, is justified by the facts and circumstances of this case, and that the KEIP is a valid exercise of the Debtor's business judgment and should be approved.

36. Further, § 105(a) empowers a bankruptcy court to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). The Debtor respectfully submits that an order approving the KEIP is necessary and appropriate under the circumstances because it will assist the Debtor in performing its duties under the Bankruptcy Code and continuing business operations and incentivizing the KEIP Insiders to maximizing value to creditors and stakeholders through pursuit of a sale or confirmation of a chapter 11 plan cases.

37. Relief similar to that requested in this Motion has been granted in other bankruptcy cases including within this District. *See, e.g.*, *In re Willowood USA Holdings, LLC, et al.*, Case No. 19-11079-KHT, Dkt. No. 343 (Bankr. D. Colo. July 8, 2019).

## **CONCLUSION**

WHEREFORE, by this Motion, the Debtor respectfully requests the Court enter an order, pursuant to §§ 105(a), 363(b) and 503(c)(3) and substantially in the form proposed herewith: (i) approving the KEIP as described herein for the benefit of the KEIP Insiders; (ii) authorizing the Debtor to make payments to KEIP Insiders under the terms of the KEIP; (iii) directing that KEIP Bonuses be paid from the proceeds of a sale of the Debtor's assets or be allowed as an administrative expense claim under § 503 under a confirmed plan of reorganization; and (iv) entering such other and further relief as the Court deems appropriate.

Dated: November 18, 2021

Respectfully submitted,

MARKUS WILLIAMS YOUNG & HUNSICKER LLC

By: */s/ Matthew T. Faga*
James T. Markus, # 25065
Matthew T. Faga, # 41132
Zachary G. Sanderson, #52899
William G. Cross, #52952
1775 Sherman Street, Suite 1950
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
Email: jmarkus@markuswilliams.com
Email: mfaga@markuswilliams.com
Email: zsanderson@markuswilliams.com
Email: wcross@markuswilliams.com

*Proposed Counsel for the Debtor-In-Possession*

## CERTIFICATE OF SERVICE

**9013-1 Certificate of Service of Motion, Cover Sheet, Exhibits, Notice and Proposed Order**

The undersigned certifies that on November 18, 2021, true and correct copies of the **MOTION FOR ENTRY OF AN ORDER AUTHORIZING IMPLEMENTATION OF KEY EMPLOYEE INCENTIVE PLAN AND AUTHORIZING PAYMENTS THEREUNDER**, all attachment thereto, proposed order and **L.B.F. 9013-1.1 Notice of Motion** were filed and served via CM/ECF pursuant to L.B.R. 9013-1 and 9036-1 as indicated below on the following:

Office of the U.S. Trustee
Byron G. Rogers Federal Building
1961 Stout St., Ste. 12-200
Denver, CO 80294

**2002-1 Certificate of Service of Notice**

The undersigned further certifies that on November 18, 2021, I directed BMC Group, Inc., the Debtor's proposed noticing agent, to serve a copy of the **L.B.F. 9013-1.1 Notice of Motion** for the **MOTION FOR ENTRY OF AN ORDER AUTHORIZING IMPLEMENTATION OF KEY EMPLOYEE INCENTIVE PLAN AND AUTHORIZING PAYMENTS THEREUNDER** by prepaid first-class mail in accordance with FED. R. BANKR. P. 2002 and 11 U.S.C. § 342(c) (if applicable) on parties in interest contained on the court's Creditor Address Mailing Matrix for the above captioned case, obtained from PACER on November 18, 2021. BMC Group, Inc. has or will file a separate certificate of service and service list reflecting service of the L.B.F. 9013-1.1 Notice of Motion/Application.

Dated: November 18, 2021                */s/ Serina Schaefer*
                                        Markus Williams Young & Hunsicker LLC
                                        1775 Sherman Street, Suite 1950
                                        Denver, CO 80203
                                        Telephone: 303-830-0800